DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Court of Common Pleas decision that overruled the motion for summary judgment of appellant, the City of Greenfield, on appellees' counterclaims.[1] Appellant assigns the following error for review and determination:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THIRD-PARTY DEFENDANT/APPELLANT IN DENYING ITS MOTION FOR SUMMARY JUDGMENT." {¶ 2} This case originated when the City of Greenfield filed a complaint for a restraining order to appellees, Gary Schluep, individually and as a member of the board of zoning appeals, and Gary Lyons ("appellees"), from violating various provisions of the Greenfield Planning and Zoning Code in their construction of an apartment complex. The trial court issued temporary restraining orders against appellees. Appellees filed separate answers to the complaint, each asserting a variety of defenses and each alleging that they were in possession of valid building permits issued by appellant.
 {¶ 3} Appellees then demanded that appellant enforce its building permits. When appellant failed to do so, appellees filed a motion to join appellant as a necessary party pursuant to Civ.R. 19 and 20. The trial court, while noting that appellant is the plaintiff on the original complaint, granted the motion and ordered that appellant be joined as a party defendant. Appellee then filed a motion entitled "CROSS CLAIM THIRD PARTY COMPLAINT" against appellant for damages and declaratory relief.
 {¶ 4} In their first claim, appellees alleged that: (1) they invested over $31,700 to fund their project in reliance upon appellant's issuance of proper variances and building permits; (2) they sustained additional damages in the amount of $68,000 due to the deprivation of the use and income from their real property; and (3) that these damages resulted from the improper, intentional and willful actions of City Law Director Conrad Curren and the intentional inaction of appellant to enforce its ordinance. In their second claim, appellees essentially raised the same affirmative defense they set forth in their answers to appellant's original complaint. Specifically, they alleged that they had "fully complied with these procedures and regulations, adopted and administered by the City of Greenfield," and asserted that they are entitled to a declaration of their right to rely upon the permits issued by appellant. Finally, appellees alleged that Curren abused his powers by participating in this action despite his conflict of interest; namely, his personal interest in the residential lot adjacent to appellee's lot. Appellees did not make clear what relief they sought with respect to this claim.
 {¶ 5} Appellant's motion for summary judgment alleged that it is entitled to political subdivision immunity on the claims set for the in appellees' complaint. The trial court denied appellant's motion.[2]
 {¶ 6} In its sole assignment of error, appellant contends that the trial court erred in denying its motion for summary judgment. Specifically, appellant contends that it is entitled to political subdivision immunity under R.C. 2744.02(A)(1) unless one of the five exceptions to immunity enumerated in R.C.2744.02(B)(1)-(5) exists.
 {¶ 7} Initially, we note that when reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer
(2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245; Graftonv. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. SeeBrown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153, 1157; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 8} Summary judgment under Civ.R. 56(C) is appropriate when the movant can demonstrate that (1) there are no genuine issues of material fact, (2) it is entitled to judgment in its favor as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party; said party being entitled to have the evidence construed most strongly in their favor. Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 369-370, 696 N.E.2d 201; Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46. Immunity from suit presents a question of law that is properly determined by summary judgment. Conley v. Shearer
(1992), 64 Ohio St.3d 284, 292; Murray v. Chillicothe, Ross App. No. 05CA2819, 2005-Ohio-5864 at ¶ 11.
 {¶ 9} After our review of the record in the case sub judice, we agree with appellant that no genuine issues of material fact remain as to whether liability may attach to it. R.C. Chapter 2744, the Political Subdivision Tort Liability Act, absolves political subdivisions of tort liability, subject to certain exceptions. See Cater v. Cleveland (1998), 83 Ohio St.3d 24,28, 697 N.E.2d 610, 614-15, 1998-Ohio-421; Franks v. Lopez
(1994), 69 Ohio St.3d 345, 347, 632 N.E.2d 502, 504; see, also,Helton v. Scioto Bd. Cty. Commrs. (1997), 123 Ohio App.3d 158,162, 703 N.E.2d 841, 843. R.C. 2744.02(A)(1) sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 10} R.C. 2744.02(B) contains certain exceptions to the general rule of non-liability. Specifically, R.C. 2744.02(B) provides:
Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by their employees upon the public roads, highways, or streets when the employees are engaged within the scope of their employment and authority. The following are full defenses to such liability: * * *
(2) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *.
(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *.
(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued. Thus, R.C. Chapter 2744 establishes a three-tier analysis for determining whether a political subdivision is immune from liability. Carter, 83 Ohio St.3d at 28,697 N.E.2d at 615. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. See Colbert v. Cleveland, 99 Ohio St.3d 215, 216,790 N.E.2d 781, 2003-Ohio-3319; Harp v. Cleveland Hts.,87 Ohio St.3d 506, 509, 721 N.E.2d 1020, 2000-Ohio-467. Second, R.C.2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See Ryll v.Columbus Fireworks Display Co., 95 Ohio St.3d 467, 470,769 N.E.2d 372, 2002-Ohio-2584. Finally, R.C. 2744.03(A) makes available several defenses that a political subdivision may assert if it is potentially subject to liability under R.C.2744.02(B). See Colbert.
 {¶ 11} Under this three-tiered framework, appellees agree that the general grant of immunity applies to appellant, but contend that the exception for negligence by employees engaged in a proprietary function applies to revoke that immunity. Specifically, appellees contend that appellant engaged in a proprietary function, not a government function, when it filed suit against them.
 {¶ 12} R.C. 2744.01(C)(1) provides a generic description of governmental functions. It provides:
(C)(1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
(b) A function that is for the common good of all citizens of the state;
(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
In addition to this general definition, the statute also provides a nonexclusive list of items that are deemed governmental functions per se. See 2744.01(C)(2). Included in that list is the "provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connections with buildings or structures." R.C.2744.01(C)(2)(p).
 {¶ 13} When deciding whether a political subdivision is engaged in a governmental or proprietary function pursuant to R.C. 2744.01, a court should look to the particular activity the subdivision is engaged in and decide whether that particular activity is of the type customarily engaged in by nongovernmental persons. Allied Erecting Dismantling Co. v. Youngstown, 151, Ohio App.3d 16, 783 N.E.2d 523, 2002-Ohio-5179, at ¶ 52. Several appellate courts in Ohio have specifically held that the denial or revocation of building permits constitutes a governmental function, and immunity applies even to equitable estoppel actions brought after a promised permit is subsequently denied. Protzmanv. Painesville, Lake App. No. 2004-L-069, 2004-Ohio-3404, at ¶ 28, citing Helfrich v. Pataskala, Licking App. No. 02CA38, 2003-Ohio-847, ¶¶ 26-27; C.V. Perry Co. v. West Jefferson
(Sept. 27, 1994), Franklin App. No. 93APE12-1640; Nagorski v.Valley View (1993), 87 Ohio App.3d 605, 609, 622 N.E.2d 1088.
 {¶ 14} In the instant case, appellees concede that the issuance or revocation of building permits constitutes a governmental function. However, they assert that the act of filing suit in this case "was a proprietary function brought solely for [Curren's] benefit and is an exception to the immunity statute." In support of their argument, they cite AlliedErecting Dismantling Co., supra. In Allied, both the City of Youngstown and Allied believed that they owned the slag and ballast on a certain parcel of property based upon their contracts with the property's former owner, a defunct railroad. Youngstown threatened to press criminal charges against Allied when it learned that Allied was removing the slag and ballast. Allied obtained a verdict against Youngstown for tortious interference with a contract and conversion. The trial court granted Youngstown's motion for judgment notwithstanding the verdict, finding that Youngstown was engaged in the governmental function of protecting government property when it threatened suit against Allied, and thus that Youngstown was entitled to immunity.
 {¶ 15} The Mahoning County Court of Appeals reversed, finding that the trial court improperly framed the inquiry regarding whether Youngstown was engaged in a governmental or a proprietary function. The trial court granted immunity on the basis of its finding that Youngstown engaged in a governmental function, because a nongovernmental person would not customarily seek to protect government property. The proper inquiry, the court of appeals held, was "whether nongovernmental persons would customarily try to protect their own property." Allied at ¶ 53. Thus, because the answer to that question is an emphatic yes, the court held that Youngstown was engaged in a propriety function, that Youngstown was not entitled to immunity, and that the jury's verdict must be reinstated. Id.
 {¶ 16} We find the case sub judice to be factually distinguishable from Allied. Unlike the City of Youngstown, appellant did not file suit in an attempt to protect its own interest in the property in question. Rather, appellant filed suit alleging that appellees had not applied for or received proper variances as required by the zoning code and had not received proper building permits. As we discuss below, even if we accept as true appellees' contention that Curren was motivated by personal interests when he brought the action on appellant's behalf, traditional agency principles do not apply under the Political Subdivision Immunity Act, and therefore Curren's personal interest is irrelevant. Additionally, the issue of whether the allegations in appellant's complaint are true is beyond the scope of our inquiry here. The issue is whether filing suit to enforce building and zoning ordinances is an act customarily engaged in by nongovernmental persons.
 {¶ 17} We find that appellant engaged in a governmental function when it filed suit against appellees. As we noted above, R.C. 2744.01(C)(2)(p) specifically lists "the taking of actions in connection with [building and planning] codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures." While the statute does not specifically list filing a complaint for an injunction among these functions, it explicitly declines to limit government functions to those listed. Moreover, even if we were to find that the statute does not clearly define filing a suit related to building permits as a government function, we would find that it constituted a governmental function here based upon the test set forth inAllied. Specifically, we find that nongovernmental persons would not customarily institute actions to enforce local ordinances. Therefore, we find as a matter of law that appellant engaged in a governmental function when it filed its complaint for an injunction against appellees.
 {¶ 18} Appellees also contend that appellant does not possess immunity for damages resulting from the complaint it filed against them because appellant waived its right to claim immunity. Specifically, they contend that Curren's actions and motivations are imported to appellant under agency principles. Appellees allege that Curren was motivated by his personal interest in an adjacent property when he instituted the initial complaint against appellees to stop the construction of their apartment complex. Curren filed the suit without first obtaining authorization from the Greenfield City Council or the Greenfield Mayor. Appellees conclude that Curren's conduct as appellant's agent is imputed to appellant, and that, because Curren took unauthorized actions motivated by personal interest, he effectively waived immunity on appellant's behalf.
 {¶ 19} The exceptions to immunity outlined in R.C. 2744.02(B) include exceptions for a subdivision employee's negligent operation of a motor vehicle, negligent performance of a proprietary function, and negligence in the maintenance of roads, buildings, and grounds. There is no statutory basis for liability on a political subdivision under the agency theory appellees suggest, and appellees cite no authority in support of their position.
 {¶ 20} Traditional principles of agency are not applicable in considering a political subdivision's claim for immunity. Woodsv. Wellston (Jun. 15, 2005), S.D. Ohio, Eastern Division, No. 2:02 CV 762. In Woods, the court held that the City of Wellston was entitled to summary judgment on the plaintiff's tort claims, including a claim of malicious prosecution, against the city for the actions of its alleged agents, various police officers and city officials. The court held: "Common law agency principles, however, are clearly trumped by the Political Subdivision Tort Liability Act. See Reno v. City of Centerville, 2nd Dist. No. 20078, 2004-Ohio-781, at ¶¶ 53 ('[a] political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C.2744.02(B) applies'). Because Plaintiff's claims * * * do not fall within one of the statutory exceptions set forth in Ohio Revised Code SS2744.02(B), the City of Wellston is immune from suit and is entitled to summary judgment on these claims." We likewise find as a matter of law that traditional agency principles do not apply to waive appellant's immunity in this case.
 {¶ 21} Because no authority supports appellees' argument that appellant waived its immunity through Curren's unauthorized acts, and because appellees' claims do not fall within any of the statutory exceptions to immunity, we find that no genuine issues of material fact exist, that reasonable minds can come to only one conclusion, and that appellant is entitled to immunity on appellee's tort claims as a matter of law. Therefore, we overrule the trial court's decision with respect to appellant's tort claims.
 {¶ 22} The parties make no mention of appellees' claim seeking a declaratory judgment stating their right to rely upon the permits appellant allegedly granted them prior to these proceedings. We note that the Declaratory Judgment Act, R.C.2721.01 et seq., explicitly applies to municipal corporations, and that appellant has not addressed any argument to why the court should grant summary judgment on this claim. Therefore, we find that the trial court did not err in finding that genuine issues of material fact exist and denying appellant's motion for summary judgment with respect to appellees' claim for declaratory relief.
 {¶ 23} Accordingly we affirm in part and reverse in part the judgment of the trial court.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part and reversed in part and that appellees and appellant share equally in the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment Only.
Abele, J. McFarland, J.: Concur in Judgment Opinion. For the Court.
[1] The parties designate appellant as a "third-party defendant" in their pleadings both here and in the trial court, and the appellees captioned their complaint against appellant as "CROSS CLAIM THIRD PARTY COMPLAINT." As the trial court noted in granting appellees' motion to "join" appellant, appellant has been a party to these proceedings from the outset. Thus, appellees' claim against appellant is properly designated as a counterclaim pursuant to Civ.R. 13, not as a third party complaint or a cross-claim.
[2] In the same entry, the trial court denied appellee's motion for summary judgment on the original complaint, appellant's motion for sanctions, and appellees' motion to strike certain affidavits filed by appellant.